**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LEO FOX,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 21-00306-CG-B** |
| | * | |
| **WINN-DIXIE MONTGOMERY, LLC,** | * | |
| *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Leo Fox's motion to remand (Doc. 19). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama, for want of jurisdiction.

## I. BACKGROUND

This personal injury action arises from a July 2019 slip and fall incident that occurred in the parking lot of a Winn-Dixie store in Mobile, Alabama. Plaintiff Leo Fox ("Fox") commenced this action on June 4, 2021, by filing a complaint in the Circuit Court of Mobile County, Alabama against Defendants Winn-Dixie

Montgomery, LLC ("Winn-Dixie"); Winn-Dixie Stores, Inc. ("WD Stores"); Southeastern Grocers, Inc. ("SE Grocers"); CX Hillcrest, LLC ("CX Hillcrest"); David Gillery ("Gillery"); and William Brent Sellers ("Sellers").[1] (Doc. 1-1 at 4-16). In his complaint, Fox alleges that he "was caused to slip and fall as a result of hidden and/or latent defects" in the store's parking lot. (Id. at 7-8). Fox alleges that, as a result of the incident,

> he suffered bodily injuries; he sustained a fracture of his right wrist; he has been caused to undergo medical treatment for his injuries; he has been caused to incur medical, hospital, drug, therapy and rehabilitation expenses; he has suffered, still so suffers and will continue to suffer physical pain, suffering, mental anguish and emotional distress; and his injuries have caused him to be deprived of much enjoyment in life and will so deprive him in the future.

(Id. at 9-13, 15). Fox asserts claims for negligence (count one) and wantonness (count two) against all Defendants, as well as claims for negligent hiring, training, and supervision (count three) and wanton hiring, training, and supervision (count four) against Winn-Dixie, WD Stores, SE Grocers, and CX Hillcrest. (Id.

---

[1] Fox's complaint also names several fictitious defendants, "a practice which is allowed under the state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1283 n.1 (S.D. Ala. 2000); see also 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). Because this case is due to be remanded, it is recommended that no action be taken as to the fictitious defendants.

at 8-15).  For relief, Fox seeks compensatory and punitive damages in an unspecified amount, plus interest and costs.  (See id. at 10, 12-13, 15).

On July 12, 2021, Winn-Dixie removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332.[2]  (Doc. 1).  In its notice of removal, Winn-Dixie alleges that there is complete diversity of citizenship between Fox, Winn-Dixie, WD Stores, SE Grocers, and CX Hillcrest, and that the two individual Defendants named in Fox's complaint, Sellers and Gillery, were fraudulently joined.[3]  (Id.

---

[2] Winn-Dixie attached to its notice of removal notices of consent to removal from CX Hillcrest, WD Stores, SE Grocers, and Sellers. (Docs. 1-8, 1-9).  Defendant Gillery, who has not yet been served, did not join in or consent to removal.  However, the "requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served."  Johnson v. Wellborn, 418 F. App'x 809, 815 (11th Cir. 2011) (per curiam) (holding that defendant did not need the consent of co-defendant who was not properly served to remove action to federal court); see also Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202, 1208 (11th Cir. 2008) ("[A] defendant has no obligation to participate in any removal procedure prior to his receipt of formal service of judicial process.").

[3] According to Winn-Dixie's notice of removal, Fox is a citizen of Alabama; WD Stores is incorporated and has its principal place of business in Florida; SE Grocers is incorporated in Delaware and has its principal place of business in Florida; Winn-Dixie is a limited liability company with a sole member that is a citizen of Florida; CX Hillcrest is a limited liability company whose members are citizens of Georgia; Sellers is a citizen of Alabama; and Gillery is alleged by Fox to be a citizen of Alabama.  (Doc. 1 at 3-5).  However, Winn-Dixie asserts that the Alabama citizenship of Sellers and Gillery should be disregarded for the purpose of determining the propriety of removal, because those individuals (Continued)

at 3-8). Winn-Dixie further contends that although Fox's complaint does not demand a specified amount of damages, the amount in controversy in this case exceeds the $75,000 jurisdictional threshold based upon Fox's "[pre-suit] demand, medical damages, demand for punitive damages, and injuries alleged." (Id. at 8-10).

Following removal, WD Stores and SE Grocers filed motions to dismiss Fox's claims against them.[4] (Docs. 3, 4). Winn-Dixie and Sellers also filed a motion seeking dismissal of Fox's claims against Sellers and Gillery.[5] (Doc. 5). CX Hillcrest filed an answer to Fox's complaint. (Doc. 16).

On August 3, 2021, Fox filed the instant motion seeking remand of this action to state court. (Doc. 19). Winn-Dixie filed a response in opposition, and Fox filed a reply. (Docs. 25, 27). Having been fully briefed, Fox's motion to remand is now ripe for resolution.

---

were fraudulently joined for the sole purpose of preventing removal to federal court. (Id. at 5-8).

[4] WD Stores and SE Grocers assert that they do not own, operate, or maintain the store in question and were therefore improperly named as Defendants. (Docs. 3, 4). They acknowledge that Winn-Dixie was properly named as a Defendant because it was the operator of the subject store. (Id.).

[5] Winn-Dixie and Sellers seek dismissal of Fox's claims against Sellers and Gillery on the basis that those Defendants were not employed at the store in question on the date of the alleged incident. (Doc. 5).

## II. **STANDARD OF REVIEW**

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441. This includes actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendants and an amount in controversy that exceeds $75,000, exclusive of interest and costs. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); 28 U.S.C. § 1332(a). The amount in controversy "is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th

Cir. 2014) (quotation omitted).

The removing party "bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." Dudley v. Eli Lilly and Co., 778 F.3d 909, 913 (11th Cir. 2014). Where, as in this case, the jurisdictional amount is not facially apparent from the complaint, the "court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden." S. Fla. Wellness, 745 F.3d at 1315. A court may rely on "its judicial experience and common sense" in determining whether a claim satisfies the amount in controversy requirement. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1064 (11th Cir. 2010). Although a court may not resort to "conjecture, speculation, or star gazing" to find that the jurisdictional threshold is satisfied, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010).

### III. **ANALYSIS**

In his motion to remand, Fox does not contest Winn-Dixie's argument that Sellers and Gillery were fraudulently joined and does not dispute that there is complete diversity of citizenship. (See Doc. 19). Instead, Fox argues that this case should be

remanded because Winn-Dixie has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000. (See id.).

In its notice of removal, Winn-Dixie relies on the following to establish the requisite amount in controversy:

    a.    a pre-suit settlement letter dated January 27, 2021,[6] wherein Fox's counsel "made a demand for $150,000 based upon medical bills of $4,890.01";

    b.    Fox's allegations in the complaint that he sustained the following damages: "[H]e suffered bodily injuries; he sustained a fracture of his right wrist; he has been caused to undergo medical treatment for his injuries; he has been caused to incur medical, hospital, drug, therapy and rehabilitation expenses; he has suffered, still so suffers and will continue to suffer physical pain, suffering, mental anguish and emotional distress; and his injuries have caused him to be deprived of much enjoyment in life and will so deprive him in the future."; and

    c.    Fox's request for punitive damages in the complaint.

(See Doc. 1 at 9-10). In its response in opposition to Fox's motion to remand, Winn-Dixie also points to a post-removal email from Fox's counsel declining to stipulate that Fox will not seek or accept more than $75,000 in this case. (Doc. 25 at 4; Doc. 25-

---

[6] The first page of the settlement letter is dated January 27, 2020, but the subsequent pages are dated January 27, 2021, and it is clear that the latter date is correct. (See Docs. 1-7; 25-1).

2).

The Court first turns to Fox's settlement offer letter, upon which Winn-Dixie relies heavily to establish that the amount in controversy exceeds $75,000. "While [a] settlement offer, by itself, may not be determinative" of the amount in controversy, "it counts for something." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). "In determining what that 'something' is, courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other." Montreuil v. Costco Wholesale Corp., 2020 U.S. Dist. LEXIS 43828, at *2, 2020 WL 1243383, at *1 (M.D. Ala. Mar. 13, 2020) (quotation omitted). A settlement offer that reflects "puffing and posturing . . . is entitled to little weight in measuring the preponderance of the evidence." Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). On the other hand, a settlement offer that provides specific information to support a plaintiff's claim for damages and suggests that a plaintiff is offering a reasonable assessment of the value of the claim is entitled to more weight. Id.

In a January 27, 2021 letter to Winn-Dixie's third-party claims administrator, Fox's counsel described the subject slip and fall incident and its immediate aftermath and detailed Fox's

resulting injuries, symptoms, reported pain levels, and medical treatment. (See Doc. 25-1 at 1-3). After doing so, counsel stated:

> To date, Mr. Fox has incurred $4,890.01 in medical bills as a result of his injuries on July 15, 2019. I am enclosing medical records and a summary of his medical expenses. Cigna-HealthSpring has a subrogation lien in the amount of $403.87.
>
> Taking into consideration the injuries sustained by Mr. Fox and the pain, suffering and daily restrictions he has experienced, I am willing to recommend that Mr. Fox accept $150,000.00 in total settlement of his personal injury claims arising from his injuries on July 15, 2019 at Winn-Dixie.
>
> Please give me a call upon receipt of this letter so that we can discuss the possibility of resolving Mr. Fox's claims prior to filing a lawsuit. I look forward to hearing from you soon.

(Id. at 3). Attached to the letter was a medical bill summary, which listed medical bills from five separate providers totaling $4,890.01. (Id. at 4).

Winn-Dixie contends that this letter is entitled to significant weight because it provides specific information about Fox's injuries, treatment, and pain, and therefore suggests that the offer to settle the case for $150,000 constitutes a reasonable assessment of the claim's value. (Doc. 25 at 5-7). In contrast, Fox characterizes the letter, somewhat ironically, as a "'shot across the bow' – that is, a mere invitation to discuss settlement" which does not offer a reasonable assessment of the case's value and should be accorded little weight in deciding the amount-in-

controversy.  (Doc. 19 at 7; see also Doc. 27 at 1-2).

There is no question that counsel's letter provides particularized information regarding the subject incident and Fox's resulting injuries, diagnoses, reported pain and other symptoms, and medical treatment.  Further, the $4,890.01 in total medical bills listed in the letter reflects an honest assessment of one component of Fox's damages and will be considered accordingly.  See Cabezudo-Vazquez v. Ross Dress for Less, Inc., 2018 U.S. Dist. LEXIS 238737, at *6, 2018 WL 7291072, at *2 (S.D. Fla. June 19, 2018).  To the extent the letter provides specific information to support Fox's claim for damages, it is entitled to some weight.

On the other hand, counsel's offer to settle the case for $150,000 cannot be realistically viewed as a measured assessment of Fox's damages.  The settlement offer letter reflects that Fox incurred medical bills totaling $4,890.01, and that there is a subrogation lien of $403.87.  (Doc. 25-1 at 3).  It also reflects that Fox's right wrist fracture had "basically healed" as of September 2019, that Fox last sought orthopedic treatment in August 2020 and last attended physical therapy in September 2020, and that Fox's thumb and right wrist are improved, albeit with lingering weakness and pain.  (Id. at 2-3).  Significantly, the letter does not suggest that Fox will require future medical

treatment. (See id.).[7] Although counsel also cited Fox's "pain, suffering and daily restrictions" as additional factors for his settlement recommendation, these unquantified damage allegations are far too vague to suggest that $150,000 was a reasonable assessment of the claim's value given Fox's relatively low medical bills and lack of other specified monetary damages.

Although the specific information provided in the letter is of evidentiary value, that information does not suggest that the amount in controversy exceeds $75,000, much less that Fox's damages approach the $150,000 figure mentioned by Fox's counsel. As the $150,000 settlement recommendation appears to be posturing by counsel rather than a reliable estimate of Fox's damages, the Court accords that recommendation little weight in determining the amount in controversy. See, e.g., Dean v. Sears, Roebuck & Co., 2014 U.S. Dist. LEXIS 29332, at *19, 2014 WL 900723, at *5 (S.D. Ala. Mar. 7, 2014) (concluding that $115,000 settlement demand did not warrant significant weight when "$14,265.30 in medical bills and $10,040.38 in lost wages and tuition [were] the only itemized damages provided" and plaintiff based the rest of her demand on "'the extent and severity of the injuries, associated pain and suffering as well as the mental anguish of such a life or death

---

[7] The letter states that Fox was instructed at his last orthopedic visit to continue wearing his wrist brace as needed. (See Doc. 25-1 at 3).

complication'"); <u>Mark v. Wood Haulers, Inc.</u>, 2009 WL 5218030, at
*9 (S.D. Ala. Dec. 31, 2009) ("[T]he March 18, 2009 pre-suit demand
letter attached to the defendants notice of removal clearly
contains a modicum of specific information-i.e., the medical
expenses incurred by each plaintiff-in support of the demands;
however, because the demands are 35 times the medical expenses
incurred by each plaintiff, the undersigned can reach no other
conclusion but that the demands are both exaggerated/'puffed' and
constitute unreasonable assessments of the value of the
plaintiffs' claims.")[8]; <u>Ware v. Checkers Drive-In Rests., Inc.</u>,
2017 U.S. Dist. LEXIS 223605, at *5, 2017 WL 10378127, at *2 (N.D.
Ga. June 30, 2017) (finding that demand letter for $750,000, which
listed specific monetary damages of at least $55,671.92 and stated
that plaintiff might require finger surgery and intended to seek
punitive damages, failed to provide "any non-speculative way of
monetizing [plaintiff's] injuries to meet the $75,000 threshold");
<u>Mitchell v. Pruitt</u>, 2017 U.S. Dist. LEXIS 148384, at *6, *9, 2017
WL 4533340, at *3-4 (M.D. Ala. Sept. 12, 2017) (finding that
settlement offer for $125,000 appeared to be "little more than
pre-suit puffering and posturing" and was "entitled to little
weight in determining the amount in controversy" where "the only

---

[8] The Court notes that counsel's $150,000 settlement recommendation
in this case was for more than thirty times the medical bills
incurred by Fox.

dollar amount specified, other than the total amount of the demand, [was] Plaintiff's gross medical expenses of $10,269.99"), report and recommendation adopted, 2017 U.S. Dist. LEXIS 167000, 2017 WL 4533132 (M.D. Ala. Oct. 10, 2017); Maisonneuve v. Quiktrip Corp., 2015 U.S. Dist. LEXIS 186095, at *4-5, 2015 WL 12645741, at *2 (N.D. Ga. Oct. 20, 2015) (finding that pre-suit settlement demand letter for $250,000 "was likely posturing for settlement purposes" and did not establish that the amount in controversy exceeded $75,000 where plaintiff estimated her medical expenses to be approximately $4,691 and indicated that her doctor had recommended surgical intervention).

Winn-Dixie further contends that Fox's allegations of various types of injuries and damages in his complaint support a finding that the amount in controversy exceeds $75,000. (Doc. 1 at 9-10; Doc. 25 at 7-9). As noted, the complaint alleges that Fox suffered a variety of damages, including bodily injuries; medical, hospital, drug, therapy, and rehabilitation expenses; past, present, and future physical pain, suffering, mental anguish, and emotional distress; and past and future deprivation of enjoyment of life. (Doc. 1-1 at 9-13, 15). However, as the undersigned and other judges in this district have previously recognized, "merely listing categories of damage does not satisfy" a removing defendant's burden of establishing the requisite amount in controversy. See Ralph v. Zaro Transp., LLC, 2021 U.S. Dist. LEXIS

86438, at *11-12, 2021 WL 2325338, at *5 (S.D. Ala. May 5, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 106184, 2021 WL 2323715 (S.D. Ala. June 7, 2021); Robinson v. Clayton, 2012 U.S. Dist. LEXIS 171503, at *4, 2012 WL 6028940, at *2 (S.D. Ala. Dec. 3, 2012); Collinsworth v. Big Dog Treestand, Inc., 2016 U.S. Dist. LEXIS 84123, at *9, 2016 WL 3620775, at *3 (S.D. Ala. June 29, 2016); Jones v. Marriott Int'l, Inc., 2018 U.S. Dist. LEXIS 85221, at *3-4, 2018 WL 2320947, at *2 (S.D. Ala. May 22, 2018); see also Williams, 269 F.3d at 1318, 1320 (finding allegations in complaint that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, incurred substantial medical expenses, suffered lost wages, experienced a diminished earning capacity, and would continue to suffer these damages into the future, along with a demand for both compensatory and punitive damages, not enough to render it facially apparent that the amount in controversy exceeded $75,000); Hill v. Toys "R" Us, Inc., 2010 U.S. Dist. LEXIS 100893, at *1-2, *7, 2010 WL 3834532, at *1, *3 (S.D. Ala. Sept. 24, 2010) (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm, and head injuries, that she had experienced and continued to experience pain and suffering, emotional distress, and mental anguish, and that she had incurred ongoing medical expenses).

Although Fox's complaint does list one specific bodily injury

("a fracture of his right wrist"), his injury and damage allegations are otherwise entirely general. (See Doc. 1-1 at 9-13, 15). And, when considered along with the other evidence in this case, Fox's general allegations of bodily injury, physical pain, suffering, mental anguish, emotional distress, and loss of enjoyment of life, without more details, are "too vague and speculative for the undersigned to find that [Fox's] claims surpass the jurisdictional threshold." See Collinsworth, 2016 U.S. Dist. LEXIS 84123, at *10-11, 2016 WL 3620775, at *4; see also Williams v. Walmart Stores E., LP, 2018 U.S. Dist. LEXIS 132889, at *6, 2018 WL 3749470, at *2 (S.D. Ga. July 9, 2018) ("[T]he general request for future damages and ongoing pain and suffering damages provides no detail or basis upon which the Court can make reasonable deductions, inferences, or other extrapolations."), report and recommendation adopted, 2018 U.S. Dist. LEXIS 132399, 2018 WL 3747454 (S.D. Ga. Aug. 7, 2018); Earl v. Diebold, Inc., 2015 WL 789763, at *6 (S.D. Ala. Feb. 25, 2015) ("Earl's complaint . . . contains no specific allegations from which one could draw any reasonable inference regarding the extent of the plaintiff's mental anguish or emotional distress, and . . . in this court's judicial experience, mental anguish and emotional distress damages in cases such as this vary widely depending on the circumstances, and even very similar circumstances may affect different plaintiffs in different ways.") (citation, internal quotation

marks, and alterations omitted). The Court also notes that, consistent with the information in the demand letter, the complaint does not allege that Fox will incur medical expenses in the future and does not allege loss of earnings or future earning capacity. (See Doc. 1-1 at 9-13, 15; Doc. 25-1).

Winn-Dixie posits that because Fox's complaint identifies "drug" and "rehabilitation" expenses as damages, the demand package must have provided only a "partial" listing of Fox's medical expenses because it did not specifically identify any amounts for drug or rehabilitation bills. (Doc. 25 at 3, 9-10). This is speculation. The medical bill summary included Fox's bills for physical therapy, which could reasonably be categorized as "rehabilitation" expenses. (See Doc. 25-1 at 4). Further, there is no evidence before the Court that the "drug" expenses referenced in Fox's complaint are not encompassed in the medical bill amounts for the five providers listed in the medical bill summary. And even if Winn-Dixie's assumption is correct, it offers no evidence as to the amount of Fox's unlisted drug and rehabilitation expenses. The undersigned therefore declines Winn-Dixie's implicit request to "indulge in speculation or fill empty gaps" in the record "with unfounded assumptions about what the evidence may show." See Arrington v. State Farm Ins. Co., 2014 U.S. Dist. LEXIS 89264, at *18, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014).

Winn-Dixie also points to the requests for punitive damages

in Fox's wantonness claims in support of its assertion that the amount in controversy is met. (Doc. 1 at 10; Doc. 25 at 8). "While a request for punitive damages does not automatically establish the amount-in-controversy, a court may properly consider punitive damages in the evaluation of whether a defendant has shown that the amount-in-controversy is satisfied." Hogan v. Mason, 2017 U.S. Dist. LEXIS 55055, at *9, 2017 WL 1331052, at *3 (N.D. Ala. Apr. 11, 2017). "But there is nothing talismanic about such a demand that would per se satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." Lambeth v. Peterbilt Motors Co., 2012 U.S. Dist. LEXIS 67591, at *14-15, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012).

Given the record before this Court, the undersigned cannot estimate the value of Fox's punitive damages claims without engaging in unbridled speculation. Winn-Dixie has not placed a value on Fox's punitive damages claims or presented evidence that would assist the Court in assigning even a ballpark value to such claims. Fox's complaint appears to essentially list boilerplate allegations for a slip and fall claim, which do not suggest that any of the Defendants' actions were so egregious or reprehensible to support a substantial punitive damages award. See Roe, 613 F.3d at 1065 (stating that, in assessing punitive damages under Alabama law, "the worse the defendant's conduct was, the greater the damages should be"); Arrington, 2014 U.S. Dist. LEXIS 89264,

at *22, 2014 WL 2961104, at *7 ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'") (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)). The Court notes that Fox's counsel did not reference punitive damages in his settlement offer letter, suggesting that it is not a significant aspect of Fox's damages. See Dean, 2014 U.S. Dist. LEXIS 29332, at *24, 2014 WL 900723, at *6 ("It is telling that, in the Plaintiff's demand letter, she did not attempt to bolster her punitive damages claim or refer to it in any way. Had her punitive damages claim constituted a significant part of her damages, she likely would have mentioned it.") (internal record citation omitted).

Finally, Winn-Dixie argues that Fox's post-removal decision not to stipulate that he will not seek or accept an amount greater than $75,000 further supports its position that the jurisdictional threshold is met. (Doc. 25 at 9-10). Winn-Dixie attaches to its response in opposition to Fox's remand motion an August 2021 email exchange between its counsel and Fox's counsel. (Doc. 25-2). In his email to Fox's counsel, Winn-Dixie's counsel stated:

> We are in receipt of your Motion to Remand in which you suggest the demand of $150K was a shot across the bow and mere puffery. Can your client confirm that he will neither seek nor accept any amount in excess of $75K? If so, we will consent to your remand. If not, we need to advise the court.

(Id. at 2).  Fox's counsel replied:

> The propriety/impropriety of removal is analyzed at the time of removal. As the removing party, Winn-Dixie bears the burden of proving the existence of federal jurisdiction. As shown in the motion to remand, Winn-Dixie did not come close to meeting its burden.
>
> I will note that your client never responded to my demand. If your client is interested in resolving the case, I will take any offers to my client. Otherwise, I am not inclined to informally express what my client will or will not take to resolve the case.

(Id. at 1).

It is "well-settled that a plaintiff's refusal to stipulate to amount in controversy . . . , without more, does not satisfy that burden because there are several reasons why a plaintiff would not so stipulate." Dunlap v. Cockrell, 336 F. Supp. 3d 1364, 1368 (S.D. Ala. 2018); see Williams, 269 F.3d at 1320.  However, where a defendant does not rely exclusively on a refusal to stipulate to the amount in controversy, "a court may consider such a refusal in making its decision on whether to remand the case." Sullins v. Moreland, 511 F. Supp. 3d 1220, 1229 (M.D. Ala. 2021).

Here, even if Fox's counsel's decision not to confirm that Fox will not seek or accept more than $75,000 provides some evidence in favor of removal, it is insufficient to satisfy the Winn-Dixie's burden of proof on the amount in controversy issue when considered along with the other evidence in this case, including Fox's less than $5,000 in specified monetary damages and the absence of claims for future medical expenses or lost earnings.

See <u>Wilson v. Chester Bross Const. Co.</u>, 2011 U.S. Dist. LEXIS 40265, at *47 n.11, 2011 WL 1380052, at *14 n.11 (S.D. Ala. Apr. 12, 2011) (finding that even if plaintiffs' post-removal refusal to stipulate that they did not seek more than $75,000 provided some evidence of the case's value, it did not satisfy the removing defendants' burden of proof on the jurisdictional issue either standing alone or "when combined with the approximately $20,000 in quantifiable damages"); <u>see also</u> <u>Walmart Stores E.</u>, 2018 U.S. Dist. LEXIS 132889, at *5-6, 2018 WL 3749470, at *2 ("In regards to the email refusing to stipulate to damages less than $75,000, absent itemization or documentation in support, it is of no value to this Court's analysis because 'jurisdiction cannot be conferred by consent.'") (citation omitted).

In the end, the Court must determine whether Winn-Dixie has demonstrated, based on the allegations in Fox's complaint, the information in Fox's settlement offer letter, and counsel's decision not to stipulate that Fox will not seek or accept more than $75,000, that the amount in controversy exceeds the jurisdictional threshold. After reviewing the evidence, the undersigned finds that Winn-Dixie has failed to demonstrate by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Accordingly, Fox's motion is due to be granted, and this action is

due to be remanded to state court.[9]

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that this Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the requisite amount in controversy is not met. Accordingly, it is recommended that Fox's motion to remand (Doc. 19) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama, for want of federal jurisdiction.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the

---

[9] Because this case is due to be remanded, it is recommended that this Court not address the Defendants' pending motions to dismiss. See Nichols v. Se. Health Plan of Ala., Inc., 859 F. Supp. 553, 559 (S.D. Ala. 1993) ("Because this case is remanded, the defendants' motion to dismiss is not considered. . . . A federal court lacking subject matter jurisdiction cannot rule on other pending motions.").

right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **13th** day of **September, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**